CHANCERY.  ## Ray, Chandler & Ray *against* Lawrence and Others.

[Mr. C. A. Wickliffe and Mr. Shuck for appellants: Mr. Willis for appellees.]

FROM THE CIRCUIT COURT FOR MARION COUNTY.

*April 27.*

Chief Justice ROBERTSON delivered the opinion of the Court.

Statement of the case.

RAY, CHANDLER and RAY, merchants, assigned some promissory notes they held on David Lawrence. The assignees obtained judgments against Lawrence, and caused executions of *fieri facias* to be issued thereon, upon each of which the sheriff returned "*no property.*" The assignors paid their assignees the amounts for which they were liable in consequence of the assignments, and filed a bill in chancery against Law-

rence, praying for a discovery of property, and a subjection of it to the satisfaction of the judgments.

Spring Term
1839.

Ray &c.
vs
Lawrence &c.

Lawrence, in his answer, admitted that he owned a female slave, but alleged that she was mortgaged to his son William, " for a valuable consideration;" and admitted, also, that he had held the equitable right to a tract of land on which he was then living; but alleged that he had, a few weeks prior to the filing of the bill, sold the land, to his son *Green*, " *bona fide*" and without any " *fraud*," and that the person, upon whom he had held a covenant for a conveyance of the legal title, had conveyed the title to Green, *after the filing of the bill.*

An amended bill was thereupon filed, charging that the alleged sale to Green Lawrence, was fraudulent and merely colorable. The answers of David and Green to that amendment, denied that the sale was fraudulent, and each averred, in nearly the same language, that Green, on the day of the contract, which was merely verbal, had paid about four hundred dollars to David for the land—two hundred dollars in money, one hundred and twenty dollars in *an assumpsit* to pay a debt David and his son William owed, the first as principal and the latter as his surety, and the residue in *services* previously rendered by Green to David, in driving horses to the South.

Upon the hearing of the case, upon the bills, answers and various depositions, the Circuit Judge dismissed the bills absolutely, as to the land, and without prejudice as to the slave.

The complainants below now seek a reversal of that decree.

We have no doubt that the complainants, as assignors, had a right—by making their assignees parties, as they did—to file their bill for a discovery, and for a decree subjecting any interests of David Lawrence,

When the assignee of a debt has pursued the debtor to a return of "no property"— the assignor, having paid the debt, may maintain a

bill, under the act of '28, to subject the debtor's equitable interests &c. to its payment—making the assignee a party.

Where the answer to a bill to discover and subject equitable interests &c. shows that the defendant owns property that is under mortgage—tho' the equity of redemption may be sold, the sale will be a recognition of the validity of the mortgage, as to the parties, and purchaser, who will take subject to the mortgage. The mortgagee must therefore be made a party, that the nature and amount of his debt may be ascertained—otherwise, the bill may be dismissed as to that property.

Spring Term
1839.
*Ray &c.*
vs
*Lawrence &c.*

either legal or equitable, under the authority of the statute of 1828.

And we are also of the opinion that, though a sale of the equity of redemption in the slave would recognize the validity of the mortgage, so far as the parties to a decree therefor and a purchaser under it might be concerned, and that, therefore, such purchaser would acquire only a right to redeem by paying the amount stipulated in the mortgage, and remaining unpaid—so that the mortgagee's interest could not be affected by such a sale subject to his mortgage—nevertheless, as a court of equity should never unnecessarily sacrifice or jeopard the interest of a debtor, it would not have been equitable to decree the sale of the equity of redemption in this case, without making the mortgagee a party, so as to ascertain the terms of the mortgage, and the amount actually due or to become due upon it.

And therefore, as the mortgagee of the slave was not made a party, there was, in our judgment, no error in dismissing the bill as to the slave, without prejudice.

But upon the more important question—that of fraud, we cannot concur with the Circuit Court.

Sale of land by a debtor to his son, & numerous facts upon which it is held, that the sale was fraudulent, & the land liable under a bill filed to reach the vendor's equitable interests.

Where a conveyance of land to which a debtor had an equitable title, is made while there is a suit pending against him, to subject his equitable interests to the payment of his debts—it is incumbent on the grantee —— who holds the affirmative—to show that, before the

From the evidence it appears, first—that, at the date of the alleged contract, Green Lawrence was only about twenty one years old, without any regular or fixed occupation, and also without any visible estate more than a horse and perhaps some pocket money. 2. That there was neither any delivery or assignment to Green, of the bond held by David, for the title to the land, nor any written memorial of the terms of the contract. 3. David continued to occupy the land for about a year after the date of the contract, and then settled on another farm rented for him, as he says, by Green, who was unmarried and without family. 4. That the conveyance was made to Green, on the seventh day after the service of the *subpœna* in this case on David. 5. Although there was no written memorial of the terms of the alleged executory agreement, the parties went from the country to the

town, and called on their lawyer to bear witness to the contract, and especially the payment of the two hundred dollars. 6. The consideration recited in the deed, is five hundred and thirty dollars—all of which, except about forty dollars, had been paid by David Lawrence, and it not only does not appear that Green Lawrence paid that balance of forty dollars to the holder of the title, but the latter, in his answer, says that *David* paid it to him, when the deed was executed; and moreover, there is no satisfactory proof that David was indebted to Green for services.

These general facts, combined with the embarrassed condition of David Lawrence, and the fact that his only other article of admitted property was mortgaged to another of his young sons, present to the experienced mind, such a semblance of contrivance to screen the land from sale by the creditors of the father, as to impel us to the judicial conclusion that the whole transaction was merely colorable. But, even if we should entertain strong doubts as to its character, we ought, in our opinion, to reverse the decree—because the lien acquired by the *lis pendens*, should not be defeated by the legal title acquired *pendente lite*, unless Green Lawrence can prove satisfactorily a prior equity obtained fairly, and upon a valuable consideration, and in good faith. The lien attached by this suit *in rem*, should not be affected by his subsequent deed only. He can succeed only by showing satisfactorily that the conveyance was but a confirmation of a valid equity acquired *bona fide* and for a valuable consideration, before the filing of the bill. As to such a preexistent equity, therefore, he holds the affirmative, and the burthen of establishing it rests on him. In this he has certainly failed; for the most favorable deduction for him, which the facts, as now appearing, will allow, is that his alleged equity is shrouded in mystery and doubt. Such an equity should not defeat the lien acquired by this suit, or cause the subsequent conveyance to overreach that lien.

We are therefore of the opinion, that the Circuit

VIII. 11

Spring Term
1839.

*Ray &c.*
vs
*Lawrence &c.*

bill was filed, he had a fair and *bona fide* contract for the land, made on a valuable con sideration, which was merely con firmed by the con veyance.

Spring Term
1839.

Judge ought to have upheld the lien, and subjected the land to sale for the benefit of the appellants.

And therefore, so much of the decree as dismissed the bill absolutely is reversed, and the cause remanded.